Jerome STONE, individually and on behalf of all others similarly situated, Plaintiff,

v.

AGNICO–EAGLE MINES LTD. et al., Defendants.

Chris Hastings, individually and on behalf of all others similarly situated, Plaintiff,

v.

Agnico–Eagle Mines Ltd. et al., Defendants.

Nos. 11–CV–7968 (JPO), 11–CV–8466 (JPO).

United States District Court, S.D. New York.

Feb. 6, 2012.

---

Scott Jason Farrell, Timothy John Macfall, Rigrodsky & Long, P.A., Garden City, NY, Seth David Rigrodsky, Rigrodsky & Long, P.A., Wilmington, DE, for Plaintiff.

Irwin Howard Warren, Miranda Saskia Schiller, Weil, Gotshal & Manges LLP, New York, NY, Curtis Victor Trinko, Law Offices of Curtis V. Trinko, LLP, New York, NY, for Defendants.

Timothy John Macfall, Rigrodsky & Long, P.A.(LIS), Garden City, NY, Richard William Gonnello, Faruqi & Faruqi, LLP, New York, NY, for Movants.

### MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge.

Before the Court are two putative class action suits brought on behalf of investors who claim to have suffered damages in connection with purchases of Agnico–Eagle Mines Ltd. ("AEM") securities as a result of Defendants' alleged misconduct in violation of the Securities Exchange Act of 1934 (the "Exchange Act") and rules promulgated thereunder. On January 6, 2012, motions were filed by Randall Humphreys (No. 11 Civ. 7968, Dkt. No. 13) and Forsta AP–Fonden ("API") (No. 11 Civ. 7968, Dkt. No. 20) for consolidation of the above-captioned cases and, pursuant to Section 21D of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), appointment as lead plaintiff and approval of proposed lead counsel.[1] *See* 15 U.S.C. § 78u–4(a)(3)(B). On January 23, 2012, Humphreys and AP 1 filed opposition papers in response to each other's motions, and on January 31, 2012, each filed reply papers.[2]

Humphreys's response and reply papers present various arguments why AP1, despite having the largest interest of any movant in the relief sought in these cases, is inadequate to serve as lead plaintiff. The Court heard argument on Humphreys and AP1's motions on February 2, 2012. For the reasons set for the below, the actions are consolidated, AP1 is appointed lead plaintiff, and the firm of Bernstein Litowitz Berger & Grossmann LLP is approved as lead counsel.

### I. Consolidation

A court may consolidate two more suits pursuant to Federal Rule of Civil Procedure 42(a) where the actions involve "a common question of law or fact." Fed. R.Civ.P. 42(a); *see also Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 130 (2d Cir.1999). A trial court enjoys broad discretion to consolidate actions under Rule 42(a). *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir.1990) (citations omitted). A

---

1. Additional motions for appointment as lead plaintiff were filed and later withdrawn (or followed by notice of non-opposition to other motions) by Robert Lacey (No. 11 Civ. 7968, Dkt. No. 5; No. 11 Civ. 8466, Dkt. No. 7); City of Brockton Retirement System (No. 11 Civ. 7968, Dkt. No. 8); Chris Hastings, Brent Barrett, Robert Ver Schave, and Ernest Schalk (together, "the Agnico–Eagle Group") (No. 11 Civ. 7968, Dkt. No. 11; No. 11 Civ. 8466, Dkt. No. 10); and

Lance Clark (No. 11 Civ. 7968, Dkt. No. 17; No. 11 Civ. 8466, Dkt. No. 13).

2. API's Reply Memorandum of Law was filed first on January 31, 2012 (No. 11 Civ. 7968, Dkt. No. 35) but then refiled under the appropriate document label on February 1, 2012 (No. 11 Civ. 7968, Dkt. No 37). The Court deems the document as filed on January 31, 2012.

court may consolidate cases "to avoid unnecessary costs or delay," but "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Id.* at 1284–85 (citations omitted).

■ Consolidation of these actions is appropriate under Rule 42(a) because the factual allegations and legal claims made in the complaints overlap and raise common questions of law and fact. *See Devlin,* 175 F.3d at 130. Both complaints assert causes of action under the Exchange Act in connection with allegedly false or materially misleading statements made on behalf of AEM. (*Compare* No. 11 Civ. 7968, Dkt. No. 1 at ¶ 51 (alleging that AEM's "statements and filings during the Class Period were materially false and misleading because they failed to disclose and misrepresented that the Goldex Mine ... was experiencing significant structural problems that would eventually require the closing of the mine in October 2011") *with* No. 11 Civ. 8466, Dkt. No. 1 at ¶ 2 (alleging that AEM "failed to disclose material adverse facts regarding the Company's overall operational and financial condition that were caused by significant geo-physical problems in its mining operations and gold production at its Goldex mine located in Val d'Or, Quebec, Canada")). The two complaints name exactly the same defendants. (No. 11 Civ. 7968, Dkt. No. 1 at ¶¶ 11–15; No. 11 Civ. 8466, Dkt. No. 1 at ¶¶ 11–15.) No one has opposed the motions to consolidate filed by Humphreys and AP1 (along with several other former movants). For these reasons, the suits are hereby consolidated.

## II. Appointment of Lead Plaintiff

The PSLRA instructs that a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B). The PSLRA directs the Court to adopt the rebuttable presumption that the "most adequate" plaintiff is the person or group of persons that (1) filed the complaint or, as Humphreys and AP1 each did here, made a motion in response to a notice of suit as outlined in the PSLRA, (2) has the largest financial interest in the relief sought by the class, and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* This presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.*

Humphreys asserts losses of approximately $3.4 million (No. 11 Civ. 7968, Dkt. No. 16–3 at 24), and AP1 asserts losses of approximately $3.6 million (No. 11 Civ. 7968, Dkt. No. 22 at Ex. B). With the largest asserted interest in the relief sought by these cases, AP1 is presumptively the most adequate plaintiff under the PSLRA, so long as it satisfies the requirements of Federal Rule of Civil Procedure 23. Humphreys raises several challenges to AP1's appointment as lead plaintiff on the grounds that AP1 lacks standing; that AP1's purchases of AEM securities on the Toronto Stock Exchange in addition to its U.S. purchases may make AP1 vulnerable to unique defenses; and that courts in AP1's home country of Sweden may not enforce a ruling of this Court, making AP1 atypical of the purported class. (No. 11 Civ. 7968, Dkt. No. 29.) Each of these arguments is addressed below.

### A. Standing

Humphreys argues that AP1 may lack standing to pursue claims on behalf of the class because the losses asserted in AP1's certification (No. 11 Civ. 7968, Dkt. No. 22 at Ex. B) may not be losses of AP1 itself but of AP1's clients. That argument is entirely contradicted by the declaration of Jan Matej, AP1's General Counsel. (No. 11 Civ. 7968, Dkt. No. 36 at Ex. A.) Matej avers that "AP1 owns all of the investments that it purchases and holds those investments in the name of [itself]. When AP1's investments lose money, [AP1] itself suffers the financial loss. At all times, AP1 maintains exclusive control over the money that it receives through the salary contributions of all employees in Sweden. No contributing employee or beneficia-

ry of [AP1] is given any discretion over how AP1 invests [its] money." *Id.* at ¶ 4.

■ AP1's assertion that it owns its investments is sufficient to establish its standing, notwithstanding speculative allegations by Humphreys. *See Teran v. Subaye, Inc.,* No. 11 Civ. 2614(NRB), No. 11 Civ. 3886(NRB), 2011 WL 4357362, at *6 (S.D.N.Y. Sept. 16, 2011) (finding lead plaintiff movant's "sworn declaration asserting that he owned the shares detailed in his certification" sufficient to overcome another lead plaintiff movant's speculation to the contrary). Further, in *Foley v. Transocean Ltd.,* 272 F.R.D. 126 (S.D.N.Y.2011), this Court determined that a foreign fund had standing to sue on its own behalf where the fund had "purchased [ ] stock in its own name.... [The fund] has exclusive control over the money it receives, invests the money in its own name, and owns all of the assets that it purchases.... When [the fund's] investments lose money, it is [the fund] that actually suffers the loss." *Id.* at 134.

AP1 notes that "other courts handling PSLRA actions have recognized that AP1 and other Swedish public pension funds organized under the same statutory system satisfy the requirements of Rule 23 and have appointed AP1 and its sister funds as Lead Plaintiff. *See, e.g., Plichta v. SunPower Corp.,* No. 09 Civ. 05473–RS, slip op. (N.D.Cal. Mar. 5, 2010) ...; *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.,* 258 F.R.D. 260 (S.D.N.Y.2009) (Chin, J.) (appointing Fjarde AP–Fonden, or AP4, as Co–Lead Plaintiff with U.S. and Dutch investors); *Monk v. Johnson & Johnson,* No. 10–4841(FLW)(DEA), slip op. (D.N.J. Dec. 6, 2010) ... (appointing AP7 as Lead Plaintiff)." (Dkt. No. 35 at 8, originally paginated 4.)

Humphreys makes the additional argument that AP1 should not represent the class because it has not demonstrated 'that it has authority to sue on its clients' behalf." (No. 11 Civ 7968, Dkt. No. 34 at 6.) AP1's sworn assertion that it owns its investments outright is sufficient to overcome this argument as well. The Court is not persuaded that AP1 lacks standing to press claims on behalf of the class.

**B. AP1's Purchases of Securities on the Toronto Stock Exchange**

■ Humphreys argues that AP1's purchases of AEM securities on the Toronto Stock Exchange (TSX) may make AP1 vulnerable to unique defenses among the class and, therefore, an inadequate lead plaintiff. Humphreys explains,

[a]s a fiduciary for its clients, AP1 is duty-bound to seek to recover for losses suffered on the Toronto exchange. However, this raises additional questions about AP1: Can it participate in both a U.S. and Canadian action when there is one pot of money that Plaintiffs will be seeking from Defendants in both cases? If AP1 does not file an action in Canada, will Defendants attack AP1 as an inadequate lead plaintiff for not guarding the interests of its pensioners? Did AP1 buy Agnico securities on the Munich, Stuttgart, Dusseldorf, Berlin, Frankfurt, or Xetra exchanges, on which Agnico securities also traded? The questions keep multiplying.

(No. 11 Civ. 7968, Dkt. No. 29 at 13, originally paginated 9.)

AP1 responds that "AP1 is not obligated to pursue securities law claims on its TSX losses in Agnico stock and has no intention of doing so." (No. 11 Civ. 7968, Dkt. No. 35 at 6, originally paginated 2 (citing No. 11 Civ. 7968, Dkt. No. 36 at Ex. A. at ¶ 10).) AP1 also cites cases concluding that "movants who purchase the securities of a company on multiple exchanges are suitable plaintiffs to lead PSLRA actions. *See, e.g., Stackhouse v. Toyota Motor Co.,* Case No. CV 10–922 DSF (AJWx) [2010 WL 3377409, at *2], 2010 U.S. Dist. LEXIS 79837, at *5–6 (C.D.Cal. July 16, 2010) (appointing as Lead Plaintiff pension fund that sustained losses on securities purchased on domestic and foreign exchanges)." (No. 11 Civ. 7968, Dkt. No. 35 at 9.)

The Court is not persuaded that AP1's purchase of AEM securities on at least one foreign stock exchange poses any barrier to AP1's adequacy to serve as lead plaintiff.

### C. Enforcement of this Court's Ruling in Swedish Courts

■ Humphreys argues further that AP 1 might not satisfy the typicality requirement of Rule 23 because, after this litigation ends, AP1 could seek relief in Swedish courts that do not accord *res judicata* effect to this Court's ruling, (No. 11 Civ. 7968, Dkt. No. 29 at 15, originally paginated 11.) Humphreys points to *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 204–205 (S.D.N.Y. 2007), where the court refused to appoint a lead plaintiff in part because a foreign government (Germany) might not give a U.S. judgment *res judicata* effect. To show that Sweden might not enforce this agreement, Humphreys cites a case from 1895 and two law review articles. (No. 11 Civ. 7968, Dkt. No. 29 at 15, originally paginated 11.)

API responds that "[c]ourts, including those in this District, have repeatedly rejected this argument and appointed non-U.S. investors, including Swedish funds like AP1, as Lead Plaintiffs." (No. 11 Civ. 7968, Dkt. No. 35 at 6, originally paginated 2 (citing *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131–33 (S.D.N.Y.2011) (Buchwald, J.) (explaining that *res judicata* concerns are "explicitly rejected when the foreign lead plaintiff movants are suing as a result of purchases made on a domestic securities exchange")).) API also affirms that it will be bound by any judgment in this Court. (No. 11 Civ. 7968, Dkt. No. 36 at Ex. A. at ¶ 10.)

The Court is not persuaded that AP1 is inadequate to serve as lead plaintiff due to the risk of Swedish courts denying *res judicata* effect to this Court's ruling.

No proof has rebutted the presumption that AP1 should serve as lead plaintiff. Neither Humphreys's request at oral argument to serve at least as co-lead plaintiff nor his request for discovery is sufficient to overcome the presumption that movant AP1 should now be appointed lead plaintiff. In accordance with the PSLRA's presumption, the Court appoints AP1 lead plaintiff for the class.

### III. API's Selection of Lead Counsel

The PSLRA provides that the lead plaintiff shall select and retain counsel to represent the class, subject to court approval. 15 U.S.C. § 78u–4(a)(3)(B)(v); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 420 (S.D.N.Y.2004). AP1 has selected the firm of Bernstein Litowitz Berger & Grossmann LLP as counsel and seeks the Court's approval of that selection. Gerald H. Silk, a partner in that firm, has submitted a "firm biography" setting forth the firm's experience as class counsel. (No. 11 Civ. 7968, Dkt. No. 22 at Ex. D.) The Court finds that Bernstein Litowitz Berger & Grossmann LLP is well qualified to serve as lead counsel in this matter. Accordingly, AP1's selection of Bernstein Litowitz Berger & Grossmann LLP is hereby approved.

### IV. Conclusion

For the reasons discussed above, it is hereby

ORDERED that the above-captioned actions are consolidated for all purposes into one action (the "Consolidated Action") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

It is FURTHER ORDERED that a Master File is established for this proceeding. The Master File shall be the action docketed at No. 11 Civ. 7968(JPO). All submissions by the parties and issuances from the Court shall be filed by the Clerk in the Master File, and such filings shall be noted on the Master Docket. Every filing in the Consolidated Action shall have the following caption:

| | |
|---|---|
| ———————————————— X | |
| : | |
| In re AGNICO–EAGLE MINES LTD. : SECURITIES LITIGATION : | 11–CV–7968 (JPO) |
| : | |
| ———————————————— X | |

Forsta AP–Fonden's motion for appointment as lead plaintiff is hereby GRANTED, and Forsta AP–Fonden is hereby appointed Lead Plaintiff for the class pursuant to Section 2ID of the Securities Exchange Act of 1934.

Forsta AP–Fonden's motion for approval of Bernstein Litowitz Berger & Grossmann LLP is GRANTED, and the firm of Bernstein Litowitz Berger & Grossmann LLP is hereby appointed Lead Counsel.

The Clerk of Court is respectfully directed to close the following motions: in case number 11 Civ. 7968, docket entry numbers 5, 8, 11, 13, 17, and 20; and in case number 11 Civ. 8466, docket entry numbers 7, 10, and 13.